UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| C.J. GLORE, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 4:23CV686 HEA |
| | ) |
| POTOSI R-III SCHOOL DISTRICT, | ) |
| | ) |
|     **Defendant.** | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Potosi R-III School District's motion to dismiss. [Doc. No. 6]. For the following reasons, Defendant's motion shall be granted in part and denied in part.

### Facts and Background

Defendant is a public school district in Missouri. Plaintiff is a recent graduate of a school within Defendant's district, Potosi High School. He brings this action under the Missouri Human Rights Act ("MHRA") and Title IX of the Education Amendments Act of 1972, alleging that Defendant discriminated against him because of his sex while he was a student at Potosi. Specifically, he claims: Plaintiff does not conform to 'stereotypical' notions of being male. Plaintiff is a man who is romantically attracted to men. Traditional norms and stereotypes suggest that women are romantically attracted to men. If Plaintiff were a male who

was attracted to women, he would not have been subject to discrimination. He also claims that Defendants discriminated against him because he associated with individuals who were likewise protected by the MHRA because of their sex.

This discrimination allegedly entailed, among other things, Defendant's teachers and administrators making demeaning comments to him about LGBTQ+ individuals, and allowing other students to make demeaning comments about LGBTQ+ individuals. Plaintiff further claims that Defendant retaliated against him after he reported this discrimination.

On March 18, 2022, Plaintiff filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR"). On February 28, 2023, the MCHR issued a Notice of Right to Sue, and on May 24, 2023, Plaintiff timely filed this action. Counts I through V of his Complaint allege Sex Discrimination in Public Accommodation (Count I), Harassment based on Sex in Public Accommodation (Count II), Retaliation (Count III), Associational Discrimination (Count IV), and Aiding, Abetting, Inciting, Compelling, Coercing, Discrimination and Harassment (Count V) in violation of Missouri Revised Statutes sections 213.065 and 213.070. Counts VI and VII allege Discrimination and Harassment (Count VI) and Retaliation (Count VII) in violation of 20 U.S.C. § 1681. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1367.

Defendant now challenges some of Plaintiff's MHRA claims under Rule 12(b)(6). It argues that some of Plaintiff's allegations cannot support an MHRA sex discrimination claim because they are untimely. Defendant also argues that Counts I and II fail because the MHRA does not recognize sexual orientation or LGBTQ+ individuals as a protected class. Additionally, it argues that Plaintiff's association with other LGBTQ+ individuals cannot support an associational discrimination claim because he is a member of the same class. Finally, Defendant argues that Plaintiff fails to allege facts showing that Defendant aided or abetted discrimination.

**Legal Standard**

For a claim to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, but it need not accept the legal conclusions. *Iqbal*, 556 U.S. at 678. The Court must make "all reasonable inferences in favor of the nonmoving party." *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019). Additionally, "Where the allegations show on the face of the complaint there is some insuperable bar to

relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

## Discussion

**Timeliness**

To assert a claim of discrimination under the MHRA, a plaintiff must file a complaint with the MCHR within 180 days of the alleged discrimination. Mo. Rev. Stat. § 213.075.1. Failure to do so may be raised as a complete defense by a defendant during the proceedings before the MCHR or in subsequent litigation. *Id*. Because Plaintiff filed his Charge of Discrimination on March 18, 2022, Defendant reasons that any allegations of discrimination taking place before September 19, 2021, cannot support his claim and must be dismissed. In particular, Defendant objects to Plaintiff's

> Allegations of discrimination and/or harassment in conjunction with his participation on a District basketball team from November 2018 to May 2019.

> Allegations that a few years ago while on a band trip, Plaintiff was sharing a hotel room with other male students who would take turns sleeping on the ground, making fun of Plaintiff because they refused to sleep next to him because of his sex, and ignoring and excluding Plaintiff because of his sex.

> Allegations that a few years ago, Plaintiff heard from other students that there were threats being made that Plaintiff was going to be subjected to violence because of his sex.

4

> Allegations related to a conversation during the 2020 presidential election with the school counselor where Plaintiff told him that he heard threats that he and other LGBTQ students were in danger if Joe Biden won the election, but nothing was done.
>
> Allegations occurring on January 15, 2021, wherein Plaintiff alleges that Defendant received a report that students at Plaintiff's high school were posting or liking hateful sex-based LGBTQ things on a social media account, that Defendant was asked to take steps to ensure Plaintiff's and others' safety, and that to Plaintiff's knowledge, Defendant took no steps to investigate the incident or keep Plaintiff or others safe.
> Allegations that in March 2021 and summer 2021, unnamed students made negative comments about gay people.

Plaintiff responds that these allegations are all part of a continuing violation and are not subject to the MHRA's 180-day limitation period. To take advantage of the continuing violation doctrine, a plaintiff must demonstrate that (1) at least one act occurred within the filing period and (2) the current claim of discrimination is part of a series of interrelated events, rather than isolated or sporadic acts of intentional discrimination. *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 252 (Mo. Ct. App. 2012) (citing *Pollock v. Wetterau Food Distribution Grp.*, 11 S.W.3d 754, 763 (Mo. Ct. App. 1999)). If the plaintiff proves both, then "the 180–day filing period becomes irrelevant ... [and][h]e may then offer evidence of the entire continuing violation." *Id*.

Plaintiff has met the first element of the test. He alleges the following acts occurred within the 180-day filing period:

> On September 24, 2021, a student made a harassing comment based on sex towards Plaintiff, telling Plaintiff being gay is wrong, on the Band bus.

5

> On October 7, 2021, while in band, a student said in front of the whole band, "How about you be the 'L' and I'll be the 'G', you be the 'B' and you be the 'T' and we can be the whole gay community. Maybe we'll get special treatment."
>
> The October 7, 2021 comment was made in retaliation after another student reported sex discrimination and harassment that she was experiencing at the hands of students and staff, including the student that made the comment.

At issue is the second element: whether the timely acts are sufficiently related to the untimely acts to constitute a "series of interrelated events." Courts analyzing whether alleged conduct constitutes a series of interrelated events look for " 'day-to-day' discriminatory events that occur on a regular basis, which . . . may not be significant individually but establish a continuing violation due to their cumulative effect." *Tisch*, 368 S.W.3d at 254 (quoting *Pollack*, 11 S.W.3d at 763). The allegations challenged by Defendant are sufficiently related to the remaining allegations to state an ongoing violation. The gravamen of Plaintiff's complaint is that Defendant's employees and administrators repeatedly failed to take action such that it effectively denied Plaintiff the same privileges of his school as enjoyed by other students. The individual instances may not have been significant, but Plaintiff has sufficiently alleged that these day-to-day occurrences combined to deny him the same access to his school as other students. Accordingly, Defendant's motion to dismiss on this basis will be denied.

**Counts I and II – Sex Discrimination**

Defendant next challenges Counts I and II, Plaintiff's sex discrimination and harassment claims under section 213.065.2. That statute provides:

> It is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person . . . any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation . . . or to segregate or discriminate against any such person in the use thereof because of . . . sex . . . .

To prevail on his claims, Plaintiff must therefore show that (1) he is a member of a class protected by section 213.065, (2) he was discriminated against in the use of a public accommodation, (3) his status as a member of a protected class was a motivating factor in that discrimination, and (4) he suffered damages as a result. *See R.M.A. by Appleberry v. Blue Springs R-IV School District*, 568 S.W.3d 420, 425-28 (Mo. 2019).

Defendant argues Plaintiff fails to adequately allege the third element: that his status as a member of a protected class was a motivating factor in the alleged discrimination. Even though Plaintiff claims he was discriminated against because of his sex, Defendant argues that this is an impermissible "sexual orientation" discrimination claim in disguise. It notes that in *Pittman v. Cook Paper Recycling Corporation*, the Missouri Court of Appeals found that the MHRA did not prohibit discrimination based upon a person's sexual orientation. 278 S.W.3d 479, 483 (Mo. Ct. App. 2015). And though an individual may demonstrate sex discrimination through evidence of sexual stereotyping, *Lampley v. Missouri Commission on*

7

*Human Rights.*, 570 S.W.3d 16, 25 (Mo. 2019), Defendant argues that non-conformance to stereotypes about sexual orientation cannot alone support a sex discrimination claim. Because the complaint "is void of any allegation as to how Plaintiff's behavior, mannerisms or appearance do not fit the stereotypical norms of what a male should be[,]" Defendant reasons that Plaintiff fails to allege that his status as a member of a protected class was a motivating factor in the alleged discrimination. Plaintiff appears to agree that the only alleged stereotype undergirding his sex discrimination claim is that "Men are romantically attracted to women." The Court cannot identify any other stereotypical "behavior, mannerism, or appearance" that he alleges that he did not conform to. However, Plaintiff argues that his allegations that he was discriminated against because of his sex is sufficient to state a sex discrimination claim, and he claims that he may demonstrate sex discrimination through evidence of sexual stereotyping.

For purposes of a motion to dismiss where all allegations are assumed true, the Court agrees that Plaintiff has adequately alleged that his sex was a motivating factor in the discrimination he faced. Throughout his complaint, he repeatedly alleges that he was discriminated against because of his sex. E.g. ("If Plaintiff were a female who was attracted to men, he would not have been subject to discrimination"). "At this stage of the proceedings, that is all that is required" of

8

Plaintiff. *R.M.A.*, 568 S.W.3d at 428-29 (allegations that "Defendants have discriminated and continued to discriminate against Plaintiff R.M.A. based on his sex" and that "Plaintiff received different and inferior access to public facilities because of his sex" were sufficient to allege that sex was a contributing factor in discrimination claim under Missouri pleading standard).

Neither *Pittman* nor *Lampley* provide a basis for concluding otherwise. In *Pittman*, Plaintiff, a gay man, alleged that his employer made a number of comments that were "discriminatory to a male homosexual" and "caused the workplace to be an objectively hostile and abusive environment[.]" *Pittman,* 478 S.W.3d at 481. The Missouri Court of Appeals agreed with the trial court that Pittman failed to state a claim because he did not allege "discrimination or harassment on the basis of 'sex.' " Id. at 483. He expressly alleged discrimination "based on sexual preference," and the MHRA does not specifically identify "sexual orientation as a protected status[.]" *Id*. at 484. However, unlike Pittman, Plaintiff does not allege that he was discriminated against based on sexual preference; he alleges he was discriminated based on his sex.

This is not a distinction without a difference. In *R.M.A.*, the Missouri Supreme Court clarified that the holding in *Pittman* was limited to MHRA claims based on sexual orientation status. There, a transgender student alleged that the defendant school district discriminated against him by denying him access to the

9

boys' restrooms and locker rooms. *Id.* at 424. In a footnote, the majority opinion rejected the dissent's argument that *Pittman* foreclosed the plaintiff's claims:

> As further support for its position that discrimination on the grounds of sex exclusively refers to biological sex, the dissenting opinion relies on Pittman v. Cook Paper Recycling Corp., 478 S.W.3d 479 (Mo. App. 2015), and numerous federal circuit court cases. Op. at 432-33 n.4. Notably, however, none of these cases define the term "sex" exclusively to mean biological sex as the dissent does. Rather, the cases cited therein hold a plaintiff cannot claim the protection of Title VII based on either his or her (1) sexual orientation status . . . or (2) transgender status . . . . But in a case such as this where the plaintiff claims his discrimination was based on sex, neither set of cases is relevant. All of the above mentioned cases are distinguishable because, unlike the plaintiff in those cases, R.M.A. does not claim protection under the MHRA based on his transgender status but, rather, based on his sex.

*RMA by Appleberry*, 468 S.W.3d at 427 n. 9. Plaintiff's claims are likewise distinguishable from *Pittman*: he does not claim protection under the MHRA based on his sexual orientation status. His allegation that he is a "man who is romantically attracted to men" is relevant to his claims only insofar as his nonconformity to stereotypes about who men are attracted to may demonstrate that he was treated differently because of his sex.

In *Lampley*, the Missouri Supreme Court concluded that a plaintiff may demonstrate sex discrimination under the MHRA through evidence of sexual stereotyping, as Plaintiff attempts to do here. Like Pittman, Lampley alleged that he was gay, but Lampley specified that his employer discriminated against him because he did 'not exhibit the stereotypical attributes of how a male should appear

10

and behave.' " *Id*. at 24. Noting that an employer's reliance upon sex stereotypes in employment decisions may support an inference of sex discrimination under an analogous federal statute, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, and that the Missouri Commission on Human Rights already forbids sexual stereotyping in hiring, the Missouri Supreme Court concluded:

> [A]n employee who suffers an adverse employment decision based on sex-based stereotypical attitudes of how a member of the employee's sex should act can support an inference of unlawful sex discrimination. Sexual orientation is incidental and irrelevant to sex stereotyping. Sex discrimination is discrimination, it is prohibited by the Act, and an employee may demonstrate this discrimination through evidence of sexual stereotyping.

*Id*. at 25.

*Lampley* did not, however, distinguish among the sexual stereotypes that can support an inference that a plaintiff was discriminated because of his sex. Such distinctions would be difficult to reconcile with *R.M.A.*'s characterization of sex stereotypes as "merely one way to prove a claim of sex discrimination," and improper to consider upon a motion to dismiss. 568 S.W.3d at 426 n.4 ("[B]ecause the issue is whether R.M.A.'s petition states a claim for sex discrimination, this Court must leave for another day consideration of the proof of that claim, including any proof of 'sex stereotyping.' ").

Defendant argues that *Lampley*'s statement that "[s]exual orientation is incidental and irrelevant to sex stereotyping" announced a rule barring the use of

11

stereotypes about sexual orientation to demonstrate sex discrimination. The Court is unpersuaded.

> First, *Lampley*'s sexual orientation was incidental and irrelevant to his sex discrimination allegations as a factual matter: "There was no allegation the discrimination was based upon [Lampley's] sexual orientation." 570 S.W.3d at 24. The majority opinion accordingly rebuffed Judge Powell's dissenting opinion characterizing Lampley "as only seeking relief from sexual stereotyping . . . based upon sexual orientation," 570 S.W.3d at 23. The Court is therefore skeptical that the Missouri Supreme Court announced a rule barring the use of stereotypes about sexual orientation to demonstrate sex discrimination when that issue was not before the court.
> Second, *Lampley* did not identify any basis for such a rule either in the text of the MHRA or in Missouri case law. Defendants note that *Lampley* cited a Second Circuit decision concluding that, "standing alone, the characteristic of being gay, lesbian, or bisexual cannot sustain a sex stereotyping claim." *Id.* at 25 (citing *Christiansen v. Omnicom Group, Inc.*, 852 F.3d 195, 201 (2d Cir. 2017). But *Lampley* did not explicitly or implicitly accept that conclusion—again, that issue was not before the court. Lampley cited the reasoning in *Christiansen* to explain that, even if an allegation that an individual is gay cannot alone sustain a sex stereotyping claim, gay individuals did "not have less protection under *Price Waterhouse* against traditional gender stereotype discrimination than do heterosexual individuals." *Id*. (quoting *Christiansen*, 852 F.3d at 200-01). Moreover, at the time the Missouri Supreme Court decided *Lampley*, the Second Circuit had already overturned its previous rulings that being gay or lesbian cannot alone demonstrate sex discrimination under Title VII. *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 108 (2018) ("[W]e now hold that Title VII prohibits discrimination on the basis of sexual orientation as discrimination 'because of . . . sex.' To the extent that our prior precedents held otherwise, they are overruled."). The Second Circuit reasoned:
>
>> Because one cannot fully define a person's sexual orientation without identifying his or her sex, sexual orientation is a function of sex. Indeed sexual orientation is doubly delineated by sex because it is a function of both a person's sex and the sex of those to whom he or she is attracted. Logically, because sexual orientation is a function of sex and sex is a protected characteristic under Title VII, it follows that sexual orientation is also protected.

>*Id.* at 113. The Court is again skeptical that the Missouri Supreme Court announced a rule of law that was unrelated to the allegations before it by citing an outdated statement of federal law elsewhere in its opinion.
>
>In short, neither *Pittman* nor *Lampley* provide support for Defendant's position. At issue in *Pittman* was whether sexual orientation is a protected status under the MHRA (it is not). And at issue in *Lampley* was whether sexual stereotypes may evince sex discrimination (they may) Neither addressed which stereotypes may evince sex discrimination, and neither found that stereotypes about sexual orientation cannot demonstrate sex discrimination. On the contrary, the Missouri Supreme Court has repeatedly rejected attempts to recharacterize a plaintiff's properly plead sex discrimination claims as impermissible sexual orientation discrimination claims, as Defendants attempts to do here. *Lampley*, 570 S.W.3d at 23; R.M.A., 568 S.W.3d at 427 n.9.

*Radford* v. *Potosi R-III School District,* No. 4:23-CV-00685-JAR, 2024 WL 1178000, at *7 (E.D. Mo. Mar. 19, 2024). Plaintiff has sufficiently alleged that he was discriminated against because of his sex. Defendant's motion to dismiss on this basis is accordingly denied.

**Count IV: Associational Discrimination**

In addition to prohibiting discrimination on the basis of certain characteristics, the MHRA prohibits discrimination "in any manner against any other person because of such person's association with any person protected by this chapter." Mo. Rev. Stat. § 213.070.1(4). In Count IV, Plaintiff alleges that Defendant discriminated against him because of his association with students "who did not conform to particular sex stereotypes of their respective sexes assigned at birth." Defendant argues that this claim must fail for two reasons: (1) LGBTQ+

13

individuals are not protected by the MHRA, and (2) as a member of the LGBTQ+ community, Plaintiff cannot establish a claim for association discrimination for associating with individuals who belong to the same class. Neither argument is persuasive at this stage of the proceeding. As explained *supra*, Plaintiff sufficiently alleges discrimination based on his sex. Plaintiff does not allege that he was discriminated against because of his association with LGBTQ+ individuals. He alleges that he was discriminated against because he associated with individuals protected by the MHRA because of their sex. Moreover, the Court agrees with Judge Ross' serious doubts, articulated in *Radford,* that the MHRA does not prohibit discrimination on the basis of one's association with a person of the same "protected class." Defendant does not explain how discrimination against a person because of their association with another person of the same "protected class" is not also discrimination "against any other person because of such person's association with any person protected by this chapter." Mo. Rev. Stat. § 213.070.1(4).

    The MHRA independently prohibits discrimination based on a person's association with a person protected by the statute. It does not require that associational discrimination is the result of a protected characteristic of the complainant. Because Plaintiff sufficiently alleges that he was discriminated

14

against based on his association with individuals protected by the statute, Defendant's motion to dismiss on this basis is denied.

**Count V: Aiding and Abetting Discrimination**.

Defendant argues that Plaintiff fails to state a claim for aiding and abetting. Section 213.070 provides that it is an unlawful practice "[t]o aid, abet, incite, compel, or coerce the commission of acts prohibited under this chapter or to attempt to do so." "Missouri law defines 'aiding and abetting' as 'affirmatively acting to aid the primary tortfeasor' by giving 'substantial assistance or encouragement' to him." *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1079 (8th Cir. 2021) (quoting *Bradley v. Ray*, 904 S.W.2d 302, 315 (Mo. Ct. App. 1995)).

Defendant argues that the complaint is devoid of allegations that it affirmatively acted to aid other tortfeasors by giving assistance or encouragement to them. Instead, the complaint alleges that Defendant merely permitted teachers and students to engage in various conduct. And it argues that mere permission is insufficient. The Court agrees.

In Plaintiff's response to the motion, Plaintiff disagrees with the Eighth Circuit's interpretation of aiding and abetting claims under the MHRA, and he cites one allegation ostensibly showing Defendant gave substantial assistance to another: Plaintiff pled that Defendant attempted to intimidate him into withdrawing

his complaint. It could be reasonably inferred that doing so constituted an affirmative act to aid the tortfeasors by giving them assistance. But, as Defendant notes, the complaint that Defendant allegedly attempted to intimidate him into withdrawing was a complaint against Defendant. One cannot aid and abet oneself under the MHRA. *Reed v. Harley-Davidson Motor Co. Grp., LLC*, No. 19-6026-CV-W-HFS, 2019 WL 13293110, at *5 (W.D. Mo. Nov. 7, 2019). Because Plaintiff does not identify any allegations which, accepted as true, support his aiding and abetting claim, the Court will grant Defendant's motion to dismiss on this basis.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. 6] is **GRANTED** in part and **DENIED** in part, as stated herein. Count V is **DISMISSED** without prejudice.

Dated this 21st day of March 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE